IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

United States of America,

    Plaintiff,

        vs.                    Case No. 13-10180-JTM

Marco Alcazar-Castello,

    Defendant.

MEMORANDUM AND ORDER

On October 31, 2013, Kansas Highway Patrol Trooper McCord was patrolling I-70 in Thomas County when stopped a Ford Expedition driven by Defendant Marco Alcazar-Castello for a lane violation. According to McCord, Alcazar-Castello consented to the search of the vehicle, during which McCord discovered approximately seven kilograms of cocaine. The Indictment charges Alcazar-Castello with one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1).

Alcazar-Castello has filed three motions which are now before the court. He seeks to suppress the stop itself, arguing that no lane violation occurred, or if it did, it was "incidental and minimal." (Dkt. 23, at 2). Second, he seeks to suppress the search of the vehicle, on the grounds that the consent to search was invalid because "the Defendant is a Spanish speaker and there is no indication Trooper McCord speaks Spanish." (Dkt. 22,

at 1). Third, he seeks to suppress "the Defendant's statements and the Defendant's consent," on the same grounds, that he "does not understand English to a level to knowingly and intelligently waive ... his rights." (Dkt. 21, at 1). The court conducted a hearing on the defendant's motions, during which both McCord and Alcazar-Castello provided testimony. As stated at the conclusion of that hearing, and as further provided herein, the court denies the motions of the defendant.

The court finds that McCord was attempting to catch up to another vehicle in front of Alcazar-Castello's Ford Explorer when he saw the Explorer swerve onto the shoulder twice. McCord had a reasonable basis for stopping the Explorer under K.S.A. 8-1522(a), which requires that a driver maintain his or her vehicle within a single lane "as nearly as practicable."

As the defendant notes, the statute does not prohibit "an incidental or minimal lane breach." *State v. Marx* 289 Kan. 657; 215 P. 3d 601, 612 (2009). This court has determined that *Marx* "is not noticeably different from the interpretations of K.S.A. 8-1522(a) reached by the Tenth Circuit in the past." *United States v. Perez-Guerrero*, 2012 WL l683201, *9 (D. Kan. 2012). Whether a lane infraction is sufficient to justify a stop under K.S.A. 8-1522(a) is a fact-specific question. *See United States v. Ozbirn*, 189 F.3d 1196 (10th Cir. 1999). The court considers factors such as traffic, weather, and road conditions which may cause a temporary or limited lane violation. *Id.* In *Ozbirn*, the court found that two minor instances of drifting onto the shoulder within a quarter mile constituted reasonable suspicion for a stop, where weather was sunny, the wind not unusually strong, and the road clear. In

*United States v. Cline*, 349 F.3d 1276 (10th Cir. 2003), the court found that even a single swerve out of a lane may give rise to a reasonable suspicion for a stop under K.S.A. 8-1522, where there are no independent or innocent reasons for the swerve.

Here, the defendant's vehicle twice drifted onto the shoulder in quick succession. As can be seen from the video of the stop, the weather and the road were both clear. Accordingly, McCord had, at a minimum, reasonable suspicion for stopping Alcazar-Castello's Ford Explorer.

Approaching the Explorer after the stop, McCord found that Alcazar-Castello was alone. The defendant said that he had been driving since Las Vegas and appeared nervous and his hands visibly trembled. McCord asked Alcazar-Castello where he was going, and Alcazar-Castello said he was going to be painting in the area, but could not give any specific town or location.

McCord issued Alcazar-Castello a warning citation, and returned his documents. He broke contact, and walked to the passenger side of the vehicle, where he asked if he could ask Alcazar-Castello some more questions. Alcazar-Castello agreed, but told a different story. He now stated that he was going home to Baytown, Texas. This explanation was not only contradictory to his earlier story, it was suspicious in itself, as McCord knew that Alcazar-Castello was not on the most direct route from Las Vegas to Texas. Alcazar-Castello then said that his GPS device told him to take the I-70 route.

McCord asked Alcazar-Castello if he was carrying any drugs, guns, or large sums of money. Alcazar-Castello laughed and said no. McCord asked if he could search the

vehicle for these items and Alcazar-Castello agreed. He got out of the car, and McCord looked under the car's undercarriage, where he saw several bolts on the transmission and transfer case which appeared to have recent tooling marks. Alcazar-Castello stated that he was the only one who drove the vehicle, and that the only repairs had been to the lights.

McCord asked Alcazar-Castello if he would follow him to a shop where they could make a closer inspection of the undercarriage. Alcazar-Castello agreed. In Colby, Kansas, the vehicle was placed on a lift, where McCord confirmed the presence of tooling marks on the transmission bolts. He also saw grease leaking from the rear seal of the transmission. He considered this unusual, because one might expect transmission fluid in such a place, but not grease.

Taken off the lift and put in four-wheel drive, the output shaft of the transfer case did not turn, thus preventing the front wheels from turning.

The Expedition was again placed on the lift and the transfer case fill plug removed. The inspectors could see a package in the transmission, and were able to remove some eight cocaine-laden packages from the transmission. Alcazar-Castello was placed under arrest, and taken to the Thomas County Sheriff's Office in Colby Kansas.

The court finds that McCord's conversations with Alcazar-Castello were in English, and that Alcazar-Castello appeared to follow and understand English. After the arrest, McCord contacted Garden City Police Department Officer Pete Deleon, who translated the Miranda warning into Spanish. Alcazar-Castello waived his rights under Miranda. He

admitted to transporting illegal substances, but stated he did not know what type of substance it was.

A traffic stop may be consensually extended beyond its original scope when the officer returns the driver's documents and asks additional questions without constraining the driver by an overbearing show of authority. *United States v. West*, 219 F.3d 1171, 1176 (10th Cir. 2000). Consent exists if a reasonable person would feel free to decline the officer's request or leave. *Id.* In determining whether consent occurred, the court may look to the number of officers present, physical mistreatment, use of violence or threats, promises or inducements, deception or trickery, and physical and mental condition and capacity of the defendant within the totality of the circumstances. *United States v. Pena*, 143 F.3d 1363, 1367 (10th Cir. 1998). Consent is "a question of fact, determined by the totality of the circumstances." *United States v. Zubia-Melendez*, 263 F.3d 1155, 1162 (10th Cir. 2001).

In applying this standard, "an officer is not required to inform a suspect that she does not have to respond to questioning or that she is free to leave." *United States v. Brandford*, 423 F.3d 1149, 1158 (10th Cir. 2005). The court looks at whether the officer used a "coercive show of authority, such as the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance might be compelled suggesting that the detention had not ended." *Id.* at 1159 (internal quotation marks and citation omitted).

The ability to understand the language spoken by the officers is a relevant fact. *See United States v. Bustillos-Munoz*, 235 F.3d 505, 517 (10th Cir. 2000). However, fluency is not

5

required; an encounter may be deemed consensual where the defendant has a "working knowledge" of English. *Zubia-Melendez*, 263 F.3d at 1163. Such "working knowledge" exists if the individual has "sufficient familiarity with the English language to understand and respond" to the officer's questions. *Id*.

The court finds that the defendant freely and voluntarily consented to the search of the vehicle and to his later discussions with law enforcement officers. The officers presented no demonstration of force which would have overcome any reasonable person. Further, the defendant had a workable knowledge of English, and was able to converse and give appropriate answers to McCord's questions. As noted at the hearing, the court specifically finds McCord's testimony credible and the testimony of the defendant not credible.

IT IS ACCORDINGLY ORDERED this 15th day of May, 2014, that the defendant's Motions to Suppress (Dkt. 21, 22, 23) are hereby denied.

s/J. Thomas Marten  
J. THOMAS MARTEN, JUDGE